**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| TORTILLA FACTORY, LLC, ) | Case No. CV 17-7539 FMO (GJSx) |
| Plaintiff, ) | |
| v. ) | **ORDER Re: PENDING MOTION** |
| GT'S LIVING FOODS, LLC, ET AL., ) | |
| Defendant. ) | |

Having reviewed and considered all the briefing filed with respect to defendant GT's Living Foods, LLC's ("defendant" or "GTLF") Motion to Dismiss Second Amended Complaint, (Dkt. 35, "Motion"), the court finds that oral argument is not necessary to resolve the Motion, see Fed. R. Civ. P. 78; Local Rule 7-15; Willis v. Pac. Mar. Ass'n, 244 F.3d 675, 684 n. 2 (9th Cir. 2001), and concludes as follows.

**BACKGROUND**

Plaintiff Tortilla Factory, LLC ("plaintiff" or "Tortilla Factory"), a California-based limited liability company, manufactures and sells kombucha drinks under the brand name "Kombucha Dog." (Dkt. 34, Second Amended Complaint ("SAC") at ¶¶ 1 & 44). Defendant, a "direct competitor" of plaintiff, also manufactures and sells kombucha drinks. (See id. at ¶ 50). Defendant is the successor entity to Millennium Products LLC (Delaware), who was the successor entity to Millennium Products LLC (California), who in turn was the successor entity to Millennium

Products, Inc. (California). (See id. at ¶¶ 3-6). As such, defendant is the "legally-responsible party with respect to liability, if any, which may have arisen against Millennium Products, Inc. or Millennium Products LLC (California) or Millennium Products LLC (Delaware)[.]" (Id. at ¶ 7).

On February 26, 2018, plaintiff filed the SAC, asserting claims for (1) false advertising and unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (2) unfair competition under Cal. Bus. & Prof. Code § 17200 ("UCL"); (3) intentional interference with prospective economic relations; and (4) negligent interference with prospective economic relations. (See Dkt. 34, SAC at ¶¶ 61-99). Plaintiff seeks compensatory and punitive damages, equitable relief, and attorney's fees and costs. (See id. at 20-21).

Defendant seeks to dismiss plaintiff's Lanham Act and UCL claims on the basis of: (1) timeliness (laches and statute of limitations) and (2) standing (failure to allege injury). With respect to the remaining state law claims, plaintiff argues that because the Lanham Act claim "is subject to dismissal . . . the Court should dismiss the entire action . . . for lack of subject matter jurisdiction[,]" (Dkt. 35, Motion at 21), and that the plaintiff's prayers for relief should be stricken as unavailable or improper. (See id. at 21-22).

## **LEGAL STANDARD**

A motion to dismiss for failure to state a claim should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974 (2007) ("Twombly"); Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009) ("Iqbal"); Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; Cook, 637 F.3d at 1004; Caviness v. Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010). Although the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do," Twombly, 550 U.S. at 555, 127 S.Ct. at 1965; Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; see also Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004), cert. denied, 544 U.S. 974 (2005) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if

those conclusions cannot reasonably be drawn from the facts alleged. Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.") (citations and internal quotation marks omitted), "[s]pecific facts are not necessary; the [complaint] need only give the defendant[s] fair notice of what the . . . claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 93, 127 S.Ct. 2197, 2200 (2007) (per curiam) (internal quotation marks omitted); Twombly, 550 U.S. at 555, 127 S.Ct. at 1964.

In considering whether to dismiss a complaint, the court must accept the allegations of the complaint as true, Erickson, 551 U.S. at 94, 127 S.Ct. at 2200; Albright v. Oliver, 510 U.S. 266, 268, 114 S.Ct. 807, 810 (1994) (plurality opinion), construe the pleading in the light most favorable to the pleading party, and resolve all doubts in the pleader's favor. Jenkins v. McKeithen, 395 U.S. 411, 421, 89 S.Ct. 1843, 1849 (1969); Berg v. Popham, 412 F.3d 1122, 1125 (9th Cir. 2005). Nevertheless, dismissal for failure to state a claim can be warranted based on either a lack of a cognizable legal theory or the absence of factual support for a cognizable legal theory. See Mendiondo v. Centinela Hosp. Med. Ctr., 521 F.3d 1097, 1104 (9th Cir. 2008). A complaint may also be dismissed for failure to state a claim if it discloses some fact or complete defense that will necessarily defeat the claim. Franklin v. Murphy, 745 F.2d 1221, 1228-29 (9th Cir. 1984).

## DISCUSSION

I.  TIMELINESS OF CLAIMS.

"Laches is an equitable time limitation on a party's right to bring suit, resting on the maxim that one who seeks the help of a court of equity must not sleep on his rights." Jarrow Formulas, Inc. v. Nutrition Now, Inc., 304 F.3d 829, 835 (9th Cir.), cert. denied, 537 U.S. 1047 (2002) ("Jarrow Formulas") (internal quotation marks and citations omitted). The party asserting laches must establish that "(1) [plaintiff's] delay in filing suit was unreasonable, and (2) [defendant] would suffer prejudice caused by the delay if the suit were to continue." Id. at 838. "A court must find both factors for a suit or remedy to be barred by laches." Au-Tomotive Gold Inc. v. Volkswagen of Am., Inc., 603 F.3d 1133, 1139 (9th Cir. 2010) ("Au-Tomotive Gold"). Defendant, as the party invoking laches, must establish both unreasonable delay and resulting prejudice. See Jarrow

Formulas, 304 F.3d at 838; see Makah Indian Tribe v. Verity, 910 F.2d 555, 558 (9th Cir. 1990) ("The moving party has the burden of persuasion in arguing for dismissal.").

For the laches inquiry, the court "determine[s] when the statute of limitations period expired for the most closely analogous action under state law." Tillamook Country Smoker, Inc. v. Tillamook Cty. Creamery Ass'n, 465 F.3d 1102, 1108 (9th Cir. 2006) (internal quotation marks omitted). "The limitations period for laches starts from the time the plaintiff knew or should have known about its potential cause of action." Id. (internal quotation marks omitted). Where the plaintiff's lawsuit was timely "within that period, there is a strong presumption against laches." Id. Moreover, "[b]ecause the application of laches depends on a close evaluation of all the particular facts in a case, it is seldom susceptible of resolution by summary judgment." Couveau v. Am. Airlines, Inc., 218 F.3d 1078, 1083 (9th Cir. 2000).

A. Lanham Act Claim.

Defendant asserts that plaintiff's Lanham Act claim is equitably barred by its lack of reasonable diligence and unreasonable delay, (see Dkt. 35, Motion at 8-13), and that a potential cause of action arises "at the point in time 'reasonable diligence' would have uncovered the factual basis for his claim."[1] (Id. at 10). According to defendant, reasonable diligence "requires a plaintiff to investigate – not accept wholeheartedly – its alleged competitor's advertising claims that are capable of being tested and have allegedly caused the plaintiff competitive harm over the interim years." (Id.). Plaintiff responds that "the preclusion of outside evidence and the resolution of all doubt in favor of the plaintiff in a 12(b)(6) motion 'poses a nearly insurmountable obstacle to the facts-sensitive inquiry associated with laches.'" (See Dkt. 47, Opposition to Motion ("Opp.") at 8)

---

[1] Defendant asserts that the court "rightfully dismissed Tortilla Factory's Lanham Act and UCL claims as time-barred in response to GT's motion to dismiss Tortilla Factory's initial complaint." (Dkt. 35, Motion at 8). Defendant's assertion is plainly incorrect as the court made no such finding. Even if it had, the finding would carry little, if any, weight because the court granted the previous motion to dismiss with leave to amend. See Askins v. United States Dep't of Homeland Sec., 899 F.3d 1035, 1043 (9th Cir. 2018) ("[W]hen an original complaint is dismissed without prejudice, the filing of an amended complaint does not ask the court to reconsider its analysis of the initial complaint. The amended complaint is a new complaint, entitling the plaintiff to judgment on the complaint's own merits; [the court does] not ask whether the plaintiff is 'precluded' or 'barred' by the prior ruling.").

(quoting Mishegal Wappo Tribe of Alexander Valley v. Salazar, 2011 WL 5038356, *7 (N.D. Cal. 2011).

"Because the Lanham Act does not have its own statute of limitations, we borrow the most analogous statute of limitations from state law in order to determine whether the plaintiff's delay in filing suit was reasonable." Au-Tomotive Gold, 603 F.3d at 1140. Here, California's three-year limitations period for fraud claims would apply. See Jarrow Formulas, 304 F.3d at 838. "[T]he limitations period runs from the time the plaintiff knew or should have known about [its] § 43(a) cause of action." Id.; see Tillamook Country, 465 F.3d at 1108 (same). "[I]f a § 43(a) claim is filed within the analogous state limitations period, the strong presumption is that laches is inapplicable; if the claim is filed after the analogous limitations period has expired, the presumption is that laches is a bar to suit." Jarrow Formulas, 304 F.3d at 837.

Since this case was filed on October 14, 2017, the court first determines whether plaintiff knew or should have known of its claims prior to October 14, 2014. Here, plaintiff alleges that: (1) it first learned of defendant's alcohol-related product defects in 2010; (2) between 2010 and 2016, defendant made numerous statements reassuring the public that "it had fixed the alcohol problem leading to the product being pulled from shelves"; and (3) as a result, "Plaintiff had no reason to question GTLF's public representations that it had . . . come into alignment with alcohol law." (Dkt. 34, SAC at ¶¶ 41-46). The SAC states that plaintiff "first became aware that GTLF had not come into compliance with alcohol laws in December of 2016[,]" when a "nation-wide coffee company informed Plaintiff that it had engaged in testing of GTLF's products, and found that GTLF was selling alcoholic beverages (Enlightened) as though they were non-alcoholic[,]" (id. at ¶ 52), and that consequently, plaintiff had "no reason" to question defendant's compliance with applicable laws until December 2016, (see Dkt. 34, SAC at ¶¶ 46 & 56).

Defendant takes the position that "[a] reasonably diligent kombucha producer would have tested the alcohol and sugar content in GT's products years earlier," (Dkt. 35, Motion at 11), concluding that plaintiff "knew or should have known" of its claims in 2010. (Id. at 10). Since the court's review on a motion to dismiss is confined to the "four corners" of a complaint, see Ponomarenko v. Shapiro, 287 F.Supp.3d 816, 826 (N.D. Cal. 2018), defendant's position has

overstepped permissible boundaries because the SAC does not give rise to a plausible inference that a reasonably diligent business – specifically, a "reasonably diligent kombucha producer" – would have considered it a prudent business investiture to randomly test defendant's products for non-compliance with applicable law. See New Mexico State Inv. Council v. Ernst & Young LLP, 641 F.3d 1089, 1094 (9th Cir. 2011) ("[R]eview is generally limited to the face of the complaint, materials incorporated into the complaint by reference, and matters of judicial notice.").

In short, the court is persuaded that plaintiff has plausibly alleged that it reasonably learned of its Lanham Act claim in 2016. (See Dkt. 34, SAC at ¶¶ 52, 56). Since plaintiff initiated suit October 2017 – well within the analogous three-year statute of limitations under California law – the presumption is that laches does not apply. See Jarrow Formulas, 304 F.3d at 837. Accordingly, defendant's Motion to Dismiss plaintiff's Lanham Act claim under the equitable doctrine of laches is denied.

B.    UCL Claim.

Defendant also contends that plaintiff's UCL claim is time-barred under both the applicable four-year statute of limitations, see Cal. Bus. & Prof. Code § 17208, and the equitable doctrine of laches. (See Dkt. 35, Motion at 8-16). Under California law, the "discovery rule[] . . . postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Aryeh v. Canon Bus. Sols., Inc., 55 Cal.4th 1185, 1192 (2013) (quoting Norgart v. Upjohn Co., 21 Cal.4th 383, 397 (1999)). Here, plaintiff alleges that it had no reason to suspect that defendant was engaged in unlawful conduct until 2016, and that it proceeded to investigate shortly afterwards. (See Dkt. 34, SAC at ¶¶ 46, 52, 56). Accepting these allegations as true, and given that plaintiff filed suit in October 2017, the court finds that plaintiff's UCL claim was timely filed. In short, the court denies defendant's Motion to Dismiss plaintiff's UCL claim as being time-barred.

C.    Prejudice.

In light of the court's determination that neither plaintiff's Lanham Act nor UCL claims are time-barred, it is unnecessary to reach the issue of prejudice. See Au-Tomotive Gold, 603 F.3d at 1139 ("A court must find both factors for a suit or remedy to be barred by laches.").

II.     STANDING.

Next, defendant contends that plaintiff fails to plausibly allege how it was injured by defendant's conduct. (See Dkt. 35, Motion at 16-17). Among other things, defendant contends that the SAC fails to "draw any link between the purported misrepresentations and any of Tortilla Factory's lost sales[,]" (id. at 17), that plaintiff's "real dispute appears to be with California's regulatory scheme," (id. at 19), and that because the parties' respective kombucha drinks "exist in different markets and are sold through different channels[,]" plaintiff "cannot have lost sales or goodwill from any alleged understating of . . . sugar content[.]" (Id. at 20).

"To invoke the Lanham Act's cause of action for false advertising, a plaintiff must plead (and ultimately prove) an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentations." Lexmark Int'l, Inc. v. Static Control Components, Inc., 572 U.S. 118, 140, 134 S.Ct. 1377, 1395 (2014) ("Lexmark"). "[A]ctions pursuant to California Business and Professions Code § 17200 are 'substantially congruent' to claims made under the Lanham Act." Cleary v. News Corp., 30 F.3d 1255, 1263 (9th Cir. 1994) (internal quotation marks omitted).

"[L]ost sales and damages to [a plaintiff's] business reputation . . . are injuries to precisely the sorts of commercial interests" protected under the Lanham Act. Lexmark, 572 U.S. at 137, 134 S.Ct. at 1393. Although a "diversion of sales to a direct competitor may be the paradigmatic direct injury from false advertising, it is not the only type of injury cognizable under [15 U.S.C. ]§ 1125(a)." Id. at 138, 134 S.Ct. at 1393. The protectable "zone of interests" also includes harm to business reputation or market position proximately caused by a competitor's falsehoods. Id.

Here, plaintiff alleges that defendant falsely labeled its Enlightened line of kombucha teas as being below 0.5% alcohol content, (see Dkt. 34, SAC at ¶¶ 30-33), and that these misrepresentations allowed defendant to: (1) circumvent state regulations prohibiting alcohol manufacturers and distributors from "pay[ing] retailers consideration to induce sales or otherwise market alcoholic beverages[,]" (id. at ¶ 27(a)); (2) circumvent state alcohol production limitations, (see id. at ¶ 57(f)); (3) avoid paying alcohol-related taxes, (see id. at ¶ 27(a)); (4) avoid increased costs associated with greater regulatory oversight, (see id. at ¶ 27); and (5) gain a broader market

base by selling alcohol to pregnant women and minors. (See id. at ¶¶ 27(e) & 27(f)). Plaintiff also alleges two specific instances where defendant gave money or other consideration to retailers "in exchange for exclusive or preferential relationships, displays, or distribution" and that defendant was only able to do so by falsely labeling its "Enlightened" line of kombucha products as non-alcoholic. (Id. at ¶ 57; see also id. at ¶ 57(d)) (alleging defendant paid a restaurant called "Tender Greens" and the organizers of an annual festival called "Lightning in a Bottle" to stop selling plaintiff's kombucha products and to sell defendant's offerings instead). According to plaintiff, it was damaged by "the loss of the Tender Greens relationship/account, and the loss of the Lightning in a Bottle relationship/account[,]" (id. at ¶ 83), as well as "loss of profit, loss of market share, and false disparagement/false-light" of plaintiff's kombucha products. (Id. at ¶ 73).

The parties do not dispute that beverages containing alcohol content exceeding 0.5% are subject to various state and federal requirements, regulations, and taxes, (see, generally, Dkt. 35, Motion; Dkt. 47, Opp.; Dkt. 56, Reply), and thus it is reasonable to infer that defendant's mislabeling of alcohol content allowed it to circumvent licensing requirements, production and distribution limitations, and tax assessments. Plaintiff alleges that defendant's small brewery license "limits production volume to 60,000 barrels per year." (Dkt. 34, SAC at ¶ 57(f)). Thus, with respect to defendant's kombucha drinks that exceed 0.5% in alcohol content but are not accurately labeled as such, if defendant's production and sales volumes of these inaccurately labeled kombucha drinks exceeded 60,000 barrels, then this excess quantity constituted illicit supply that effectively usurped market share and sales from competitors such as plaintiff. Because these injuries are within the zone of protectable interests, see Lexmark, 572 U.S. at 137-38, 134 S.Ct. at 1393, the court concludes that plaintiff has adequately pled standing and injury-in-fact.

III. STATE LAW CLAIMS.

Defendant contends that plaintiff's state law claims for intentional and negligent interference with prospective economic relations should be dismissed "for lack of subject matter jurisdiction" but then urges the court to decline to exercise supplemental jurisdiction over these claims. (Dkt. 35, Motion at 21; see Dkt. 56, Reply at 20). As a fundamental matter, "whether a court has subject-matter jurisdiction over a claim is distinct from whether a court chooses to exercise that

jurisdiction." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639, 129 S.Ct. 1862, 1866 (2009). Put differently, the court does not lack subject matter jurisdiction over plaintiff's state law interference claims. In any event, defendant's request is denied as the court has already determined that plaintiff's SAC states a viable claim under the Lanham Act.

IV. PROPRIETY OF REQUESTED RELIEF.

Lastly, defendant argues that plaintiff's request for injunctive relief, disgorgement, and restitution, (see Dkt. 34, SAC at ECF 353-54), should be stricken on the basis that such relief is "unavailable as a matter of law." (Dkt. 35, Motion at 22-24). Specifically, defendant contends that under the UCL, (see, generally, Dkt. 35, Motion; Dkt. 56, Reply), plaintiff may not seek to enjoin or otherwise control defendant's allegedly unlawful or unfair conduct by compelling correction of its product labels to reflect accurate sugar and alcohol levels because doing so intrudes on the authority of a state agency, (see Dkt. 35, Motion at 21-22), that plaintiff's request for disgorgement is in reality a request for "nonrestitutionary disgorgement, which is not available under the UCL[,]" (id. at 22), and that it is not entitled to restitution because the SAC fails to plausibly plead some vested interest in the money or interest allegedly lost. (See id. at 22-23). Plaintiff responds that while California alcohol laws provide a state regulatory framework, these same laws do not bar UCL claims for injunctive relief, (see Dkt. 47, Opp. at 20) (citing Wiseman Park, LLC v. S. Glazer's Wine & Spirits, LLC, 16 Cal.App.5th 110, 114 (2017)), and that its disgorgement request is restitutionary in nature, (see id. at 21) (citing Clayworth v. Pfizer, Inc., 49 Cal.4th 758, 789 (2010)).

Under the circumstances, the court is persuaded that plaintiff's SAC sets forth proper requests for relief. Accordingly, defendant's request to strike the SAC's prayers for relief is denied.

## **CONCLUSION**

Based on the foregoing, IT IS ORDERED THAT:

1. Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint **(Document No. 35)** is **denied**.

9

2. Defendant shall file its Answer no later than **January 4, 2019**.

Dated this 28th day of December, 2018.

/s/
Fernando M. Olguin
United States District Judge