UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7539 FMO (GJSx) | Date | June 9, 2022 |
|---|---|---|---|
| Title | Tortilla Factory, LLC v. GT's Living Foods, Inc. | | |

| Present: The Honorable | Fernando M. Olguin, United States District Judge | |
|---|---|---|
| Gabriela Garcia | None | None |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorney Present for Plaintiff(s): | | Attorney Present for Defendant(s): |
| None Present | | None Present |

**Proceedings:** (In Chambers) Order Re: Motions in Limine

Having reviewed and considered the briefing with respect to the parties' motions in limine, and the hearings held on June 29, 2021, May, 27, 2022, and June 3, 2022, the court concludes as follows.

## LEGAL STANDARD

Motions in limine are procedural devices to obtain an early and preliminary ruling on the admissibility of evidence. Although the Federal Rules of Evidence do not explicitly authorize motions in limine, the Supreme Court has noted that trial judges have developed the practice pursuant to their authority to manage trials. See Luce v. United States, 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 463 n. 4 (1984). Trial courts have broad discretion when ruling on motions in limine. See Jenkins v. Chrysler Motors Corp., 316 F.3d 663, 664 (7th Cir. 2002). However, "a motion in limine should not be used to resolve factual disputes or weigh evidence." C & E Servs., Inc. v. Ashland Inc., 539 F.Supp.2d 316, 323 (D.D.C. 2008).

To exclude evidence on a motion in limine, the evidence must be "clearly inadmissible on all potential grounds." Ind. Ins. Co. v. Gen. Elec. Co., 326 F.Supp.2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." Hawthorne Partners v. AT & T Tech., Inc., 831 F.Supp. 1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions in limine may save "time, cost, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." Wilkins v. Kmart Corp., 487 F.Supp.2d 1216, 1218 (D. Kan. 2007).

Rulings on motions in limine "are not binding on the trial judge [who] may always change his mind during the course of a trial." Ohler v. United States, 529 U.S. 753, 758 n. 3, 120 S.Ct. 1851, 1854 n. 3 (2000). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted at trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." Ind. Ins. Co., 326 F.Supp.2d at 846.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7539 FMO (GJSx) | Date | June 9, 2022 |
|---|---|---|---|
| Title | Tortilla Factory, LLC v. GT's Living Foods, Inc. | | |

**DISCUSSION**

I.   PLAINTIFF'S MIL NO. 1.

Plaintiff Tortilla Factory ("plaintiff" or "TF") seeks to exclude the testimony of defendant GT's Living Food, LLC's ("defendant" or "GT") witness Hannah Crum ("Crum") on the grounds that she was not designated as an expert witness and does not qualify as such.  Also, to the extent Crum is a percipient witness, TF contends that she has no relevant personal knowledge, and any personal knowledge she does have is irrelevant and unfairly prejudicial.  (Dkt. 253, Plf. MIL No.1 at 1).  Although defendant does not dispute that Crum was not designated as an expert, (id. at 7), it contends that her testimony is relevant given her role as the founder and president of Kombucha Brewers International ("KBI"), which publishes "best practices" regarding alcohol testing for its members.  (See id. at 7-10); (Dkt. 258-1, Exh. 1A (Excerpts from Crum Depo) at 27-30).

Under the circumstances, Crum's testimony is irrelevant to the issues in this case.  She does not have any personal knowledge regarding defendant's compliance with KBI's own recommendations or what methods defendant uses to test for alcohol levels.  (See Dkt. 253, Plf. MIL No.1 at 4-5); (Dkt. 258-1, Exh. 1A (Excerpts from Crum Depo) at 30) (testifying that she does not "know whether GT[] follows the best practices"); (Dkt. 258-1, Exh. 1A (Excerpts from Crum Depo) at 88) (testifying that she does not "know what method or methods GT[] uses . . . for alcohol levels").  With respect to Crum's testimony regarding Michael Faye ("Faye"), the principal of Tortilla Factory, and her interactions with him, the court finds it irrelevant to the issues in this case, particularly given Crum's vague testimony regarding conduct that may have occurred in 2009. (See Dkt. 258-1, Exh. 1A (Excerpts from Crum Depo) at 121) (testifying that in approximately 2009 Faye "may or may not have used [her] likeness and biography in his pitch to get funding" and testifying further that she did not recall how she came about such information); (id. at 248-249). Even if relevant, such evidence should be excluded under Federal Rule of Evidence 403,[1] as it would cause undue delay and be unfairly prejudicial.  See Fed. R. Evid. 403.  Accordingly, TF's MIL No. 1 is granted.

II.   PLAINTIFF'S MIL NO. 2.

TF seeks to exclude any evidence regarding "GT's purported deductible cost information" due to GT's failure to produce such information during fact discovery.  (Dkt. 254, Plf. MIL No. 2 at 1).  TF contends that even though the SAC seeks disgorgement of GT's profits as a remedy under the Lanham Act, (id. at 1), and GT has the burden of proof to establish any costs that should be deducted from the disgorged profits, (id.), GT "produced no evidence prior to the fact discovery cutoff supporting its purported entitlement to costs and deductions to offset its profits."  (Dkt. 254, Plf. MIL No. 2  at 1).  According to plaintiff, GT first identified its costs and expenses in the Expert Report of John Hansen ("Hansen"), "long after the fact discovery cutoff of February 15, 2019."  (Id.

---

[1] Unless otherwise indicated, all "Rule" references are to the Federal Rules of Evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7539 FMO (GJSx) | Date | June 9, 2022 |
|---|---|---|---|
| Title | Tortilla Factory, LLC v. GT's Living Foods, Inc. | | |

at 2). GT counters that the cost data "did not exist before [it was produced in connection with the Hansen Report] in an easily producible format," and that Hansen had to derive such information from discussions with GT's CEO and a document that GT prepared at Hansen's request. (Dkt. 254, Plf. MIL No. 2 at 9-10). GT also contends that it was justified in proceeding as it did. (Id. at 10).

Under the circumstances, the court is not persuaded that GT's failure to produce cost data during fact discovery was improper, as the subject information was clearly the topic of expert discovery. GT produced the cost data in connection with expert discovery, and in response to the expert report of GT's damages expert, Dr. Keith Ugone ("Ugone"). (See id. at 11). Accordingly, TF's MIL No. 2 is denied.

III.     PLAINTIFF'S MIL NO. 3.

TF seeks to exclude testimony and other evidence offered by Hansen, GT's damages expert, regarding "purported apportionment of [GT's] damages." (Dkt. 255, Plf. MIL No. 3 at 1) (internal quotation marks omitted). TF contends that Hansen's apportionment of profits "is not based upon a proper legal theory as its analysis focuses on Tortilla Factory's sales rather than the underlying basis for GT's profits." (Id.).

As an initial matter, plaintiff does not challenge Hansen's qualifications. (See, generally, Dkt. 255, Plf. MIL No. 3 at 1-7). In any event, as the court stated during the June 29, 2021, hearing, if a liability finding is made against defendant, the court will reopen discovery for the limited purpose of allowing defendant to produce evidence relating to disgorgement, such as cost data and apportionment. See Fifty-Six Hope Road Music, Ltd. v. A.V.E.L.A. Inc., 778 F.3d 1059, 1076 (9th Cir. 2015) ("Plaintiffs claim the district court erred by reopening discovery to allow [defendant] to produce proof of its deductible costs after trial, when [defendant] had only produced an unsupported summary document of its costs prior to trial. While Plaintiffs might consider this unfair, the district court's decision was within its broad discretion.").

IV.     PLAINTIFF'S MIL NO. 4.

TF seeks to exclude evidence regarding the amounts paid by defendants in lawsuits it filed against seven different kombucha makers or sellers regarding their alleged misrepresentations of the alcohol and/or sugar content in their kombucha products. (See Dkt. 256, Plf. MIL No. 4 at 2). The court agrees with plaintiff that the amounts plaintiff received from other kombucha makers or sellers in connection with other lawsuits are irrelevant to the issues in this case. To the extent the settlement amounts are probative of any issue – and the court is unpersuaded by defendant's assertion that it goes to whether plaintiff may establish irreparable harm in this action, (see id. at 4-5) – the court finds that it is outweighed by the danger of unfair prejudice, as TF's decision to settle its lawsuits against other kombucha makers has no bearing on the current action. See Fed. R. Evid. 403. The court is also concerned that GT's efforts to use the settlement amounts to defeat TF's request for injunctive relief is inconsistent with the text and purpose of Rule 408, which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7539 FMO (GJSx) | Date | June 9, 2022 |
|---|---|---|---|
| Title | Tortilla Factory, LLC v. GT's Living Foods, Inc. | | |

limits evidence of settlement amounts.  See Fed. R. Evid. 408.  Accordingly, plaintiff's MIL No. 4 is granted.

V.  PLAINTIFF'S MIL NO. 5.

TF seeks to exclude evidence regarding George Dave's mother's breast cancer as irrelevant and unduly prejudicial.  (See Dkt. 257, Plf. MIL No. 5 at 1-2).  Given that both parties seek to introduce evidence regarding their "origin story[,]" which for plaintiff involved a desire to "help rescue dogs[,]" (see Dkt. 276, Reply [] at 1), the court is unpersuaded by plaintiff's contentions that information about defendant's founding fails to clear "the low bar for relevancy under Federal Rule of Evidence 401[.]"  See Slaughter-Payne v. Shinseki, 522 F.Appx. 409, 410 (9th Cir. 2013); Crawford v. City of Bakersfield, 944 F.3d 1070, 1077 (9th Cir. 2019) ("Rule 401's basic standard of relevance is a liberal one.") (cleaned up).  Nor would this evidence be unfairly prejudicial since plaintiff intends to present similar information about its origins.  (See Dkt. 257, Plf. MIL No. 5 at 3).  Finally, plaintiff's concern that this evidence will "provoke an emotional response in the jury that will unfairly prejudice" plaintiff is unavailing now that the entire case will be tried to the bench.  Plaintiff's MIL No. 5 is denied.

VI.  DEFENDANT'S MIL NO. 1.

GT seeks to exclude four categories of testimony (and related emails) from TF's principal, Michael Faye.  (See Dkt. 265, Def. MIL No. 1 at 1-2); Fed. R. Evid. 801, 802.  First, GT seeks to exclude Faye's testimony (and related emails) that: (a) a former TF employee told Faye that a representative from Tender Greens told the employee that Tender Greens ended its business relationship with TF because TF could not pay certain marketing funds that GT paid; and (b) another employee, Gabe Guynes ("Guynes"), told Faye that another Tender Greens representative, Rian Brandenburg, told Guynes that Tender Greens decided not to sell Kombucha Dog because it did "not want to limit the Kombucha to a 21 and over crowd[.]"  (Dkt. 265, Def. MIL No. 1 at 1-2).  TF claims that this evidence is not hearsay because it is "not being offered to prove the truth of the matter asserted, but rather for the effect that those statements had on Mr. Faye."  (Id. at 7).  According to TF, the Tender Greens-related statements led "Faye to believe that Tortilla Factory could not compete with GT's prices due to state and federal regulations on alcoholic beverages, and that the marketing fee GT[] paid to secure its exclusivity was an avenue not open to Tortilla Factory due to its compliance with alcohol laws[.]"  (Id.).  However, TF does not point to any element of its claims (or GT's defenses) in which the state of mind of TF's principal, Michael Faye, would be relevant.  (See, generally, id.); (see Dkt. 279, GT's [] Reply Memorandum ("Reply Memo") at 2); cf. Romag Fasteners, Inc. v. Fossil, Inc., 140 S.Ct. 1492, 1497 (2020) (noting that a "defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate").  Thus, even if the statements are not hearsay because they are not being offered for the truth of the matter asserted, the statements are irrelevant to the issues in the

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7539 FMO (GJSx) | Date | June 9, 2022 |
|---|---|---|---|
| Title | Tortilla Factory, LLC v. GT's Living Foods, Inc. | | |

case, and thus inadmissible.[2]  See Fed. R. Evid. 402 ("Irrelevant evidence is not admissible.").

Second, GT seeks to exclude testimony from Faye that a Lighting in a Bottle ("LIB") employee told him that LIB ended its relationship with Tortilla Factory because GT paid for an exclusivity agreement.  (See Dkt. 265, Def. MIL No. 1 at 2) (citing Faye Depo at 127-128).  As with the Tender Greens statements, TF contends that it will rely on the statements not for the truth of the matter asserted, but "rather merely to exemplify the effect" those statements had on Faye. (Id.).  More specifically, TF contends that the LIB statements led Faye "to believe that Tortilla Factory could not enter into an exclusive relationship with [LIB], and that GT[] was portraying its kombucha as non-alcoholic in order to obtain an exclusive agreement with the festival." (Id. at 7).  As with the Tender Greens statements, TF has not shown how such effects on Faye are relevant in this action.  (See, generally, id. at 7-8); (see Dkt. 279, Reply Memo at 2).

Third, GT seeks to exclude testimony from Faye that representatives from vendors, such as Café Gratitude and Jimbo's, told Faye that they did not want to purchase TF's kombucha because they preferred to sell nonalcoholic kombucha, like GT's. (See Dkt. 265, Def. MIL No. 1 at 2).  TF does not address the hearsay aspects of the evidence, (see, generally, id. at 8-9), and represents that, while it does not intend to pursue interference claims against GT based on retailers other than Tender Greens and LIB, (see id. at 7), the evidence is relevant to its Lanham Act claim.  (See id. 7-8).  However, TF has not shown how such evidence, if not admitted for the truth of the matter asserted, is relevant to the Lanham Act claim.  (See, generally, id.).

Fourth, GT seeks to exclude testimony from Faye estimating or discussing "GT's overwhelming market share[,]" based on out-of-court statements, including reports in SPIN and in lectures.  (Dkt. 265, Def. MIL No. 1 at 2).  TF contends that the evidence is not being offered for the "truth of the matter asserted, but rather as evidence of Mr. Faye's understanding of the competitive-issues in the distorted kombucha market" and thus his "state of mind[.]"  (Id. at 10).  As noted above, with respect to the claims at issue in this action, plaintiff's state of mind is irrelevant.

GT also seeks to exclude any testimony from Faye regarding TF's damages.  (See Dkt. 265, Def. MIL No. 1 at 1, 3-5).  According to GT, TF "never disclosed a computation of its damages during fact or expert discovery[,]" (id. at 4), and waited until it served its opposition to GT's motion for summary judgment to do so.  (Id.) (citing Dkt. 149-4, Declaration of Michael Faye in Support of [TF's] Opposition to Summary Judgment ("Faye MSJ Decl.")).

---

[2]  Alternatively, TF contends that to the extent the Tender Green "evidence relied upon is from emails and other Tortilla Factory business records, the evidence is . . . admissible under the business record exception[.]"  (Dkt. 265, Def. MIL No. 1 at 8); Fed. R. Evid. 803(6).  To the extent TF is able to show that the email in question, (see Dkt. 270-8, Exh. H (June 2014 email)), falls within the business records exception, it will be admissible at trial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7539 FMO (GJSx) | Date | June 9, 2022 |
|---|---|---|---|
| Title | Tortilla Factory, LLC v. GT's Living Foods, Inc. | | |

Rule 26 of the Federal Rules of Civil Procedure provides that "a party must, without awaiting a discovery request, provide to the other parties[] a computation of each category of damages claimed by the disclosing party–who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered[.]"  Fed. R. Civ. P. 26(a)(1)(A)(iii).  "This disclosure provision, however, applies only with respect to materials available to the party seeking monetary relief, and where the materials necessary for the computation are not in this party's possession this disclosure requirement does not apply."  Undiscovered Corp. v. Heist Studios, 2019 WL 8219489, *2 (C.D. Cal. 2019) (citing 8A Fed. Prac. & Proc. Civ. § 2053 (3d ed.)) (internal quotation marks omitted).  Federal Rule of Civil Procedure 37, in turn, provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . at trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

Here, despite the fact that TF alleged in its initial Complaint that it suffered damages in the form of "the loss of the Tender Greens relationship/account, and the loss of the Lightning in a Bottle relationship/account[,]" (Dkt. 1, Complaint at ¶ 85); (see also id. at ¶¶ 88-95) (asserting claim for intentional interference with prospective economic relations based on allegations regarding Tender Greens and Lightning in a Bottle), plaintiff did not provide a computation of damages relating to those entities.  (See Dkt. 265, Def. MIL No. 1 at 10-13).  TF never provided such a disclosure, either in connection with its Rule 26 obligations, or during fact and expert discovery.  (See id. at 4); (see, generally, id. at 11-13).  Nor does TF contend that it did not have in its possession the materials necessary for a computation of damages either at the time it served its initial disclosures or before the close of discovery.  (See, generally, id.); see, e.g., Undiscovered Heist, 2019 WL 8219489, at *2.

Instead, TF contends that it "disclose[d] damages-related evidence" during discovery in the form of "revenues from both Tender Greens and Lightning in a Bottle."  (Dkt. 265, Def. MIL No. 1 at 12-13).  But revenue information is not all that Rule 26 requires.  See Fed. R. Civ. P. 26(a)(1)(A)(iii) (party must disclose "a computation of each category of damages").  Rule 26 requires some analysis, enough so that the opposing party can "understand the contours of its potential exposure and make informed decisions as to settlement and discovery."  City & County of San Francisco v. Tutor-Saliba Corp., 218 F.R.D. 219, 221 (N.D. Cal. 2003); Vinotemp Int'l Corp. v. Wine Master Cellars, LLLP, 2013 WL 5366405, *3 (C.D. Cal. 2013) (same).  "Plaintiff's initial disclosure . . . should disclose a computation of each category of damages attributable to each cause of action."  Frontline Medical Associates, Inc. v. Coventry Health Care, 263 F.R.D. 567, 569 (C.D. Cal. 2009).  As already noted, TF never provided such a disclosure despite allegations in its complaint specific to the loss of the Tender Greens and LIB business relationships.[3]  (See Dkt.

---

[3] Even if plaintiff provided revenue information, determining lost profits would not be a matter of "simple arithmetic," as plaintiff contends.  (See Dkt. 265, Def. MIL No. 1 at 13).  Indeed,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7539 FMO (GJSx) | Date | June 9, 2022 |
|---|---|---|---|
| Title | Tortilla Factory, LLC v. GT's Living Foods, Inc. | | |

1, Complaint at ¶¶ 85, 88-89). Finally, TF makes no argument that its failure was substantially justified or is harmless. (See, generally, id.). Accordingly, the court will grant GT's MIL No. 1, with the exception of the June 2014 email, (Dkt. 270-8, Exh. H, June 2014 email).

VII. DEFENDANT'S MIL NO. 2.

GT seeks to exclude the expert opinion and testimony of Ugone, TF's expert witness. According to GT, Ugone has indicated that he intends to offer "opinion testimony on two subjects: (1) any harm (or 'indicators' thereof) to TF purportedly caused by GT[]; and (2) his 'disgorgement analysis' of GT's 'ill-gotten gains.'" (Dkt. 266, Def. MIL No. 2 at 1).

Rule 702 provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Rule 702 inquiry focuses on the witness's qualification to render an expert opinion on a subject, the reliability of the expert's methodology and the information or assumptions used in extrapolating the opinion evidence, and its evidentiary relevancy. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152, 119 S.Ct. 1167, 1176 (1999) ("[T]he importance of Daubert's gatekeeping requirement . . . is to ensure the reliability and relevancy of expert testimony."); Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93, 113 S.Ct. 2786, 2796 (1993) (The admissibility inquiry "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue."). "It is the proponent of the expert who has the burden of proving admissibility." Cooper v. Brown, 510 F.3d 870, 942 (9th Cir. 2007).

First, with respect to Ugone's testimony regarding harm or damages allegedly suffered by TF as a result of GT's advertising, GT argues that Ugone "cannot reliably opine" on whether "the alleged wrongful conduct has caused lost sales to [TF]" because he "conducted no analysis to exclude alternative causes of whatever harm [TF] claims to have suffered[.]" (Dkt. 266, Def. MIL No. 2 at 3-4). TF responds that "Ugone does not propose to testify about the cause or amount of

---

Dr. Ugone, plaintiff's expert, conducted a disgorgement analysis and not a lost profits analysis. (See Dkt. 270-5, Dr. Ugone Depo at 108).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7539 FMO (GJSx) | Date | June 9, 2022 |
|---|---|---|---|
| Title | Tortilla Factory, LLC v. GT's Living Foods, Inc. | | |

[TF's] lost profits. . . . Rather, he will testify as to the existence of a clear nexus between GT's misconduct and the harm caused to [TF]." (Id. at 14).

As an initial matter, Ugone's expert report makes clear that he was only "asked to evaluate [GT's] ill-gotten gains" and that he had "been asked to assume liability . . . and that disgorgement is an appropriate remedy." (Dkt. 149-2, Expert Report of Keith R. Ugone, Ph.D. ("Ugone Rpt.") at ECF 326). Ugone then testified that he never considered "indicators of harm . . . as an input to be giving some liability opinion . . . because [he is] not doing the liability side" and is "ultimately . . . doing an ill-gotten gain disgorgement analysis[.]" (Dkt. 270-5, Exh. E, Excerpts from Ugone's Deposition ("Ugone Depo.") at 123-24).

TF argues that Ugone's opinion is reliable because he "recognizes indicators of harm" through his review of "various relevant discovery materials, deposition testimony he reviewed, and from the expert opinion of Dr. Roberts[.]" (Dkt. 266, Def. MIL No. 2 at 10). However, Ugone's "indicators of harm" opinion is based on an opaque evaluation of the evidence which may be presented at trial, and he nowhere presents a methodology – much less a reliable one – which would explain how he arrived at his conclusions beyond his subjective beliefs. (See, generally, Dkt. 149-2, Ugone Rpt.). Indeed, Ugone's opinion on this topic "reflect[s] no more than his summary of, and spin on, internal [TF] documents" and other testimony to be presented, but these documents and testimony will "speak for themselves and do not require expert testimony to discern what they mean." Bracco Diagnostics, Inc. v. Amersham Health, Inc., 627 F.Supp.2d 384, 442 (D.N.J. 2009) (excluding similar expert testimony because it was "unhelpful to the . . . trier of fact"); see also Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence."). In short, the court will grant GT's MIL No. 2 as it relates to Ugone's proposed opinion on what he views as "indicators of harm."

Second, GT seeks to exclude Ugone's expert testimony "regarding GT's alleged ill-gotten gains [as] irrelevant, unhelpful and inadmissible." (Dkt. 266, Def. MIL No. 2 at 8). GT takes issue with Ugone's disgorgement analysis because it "merely estimates GT's total profits with respect to its sales of Enlightened and Classic products in California" and does not attempt to segregate out which portion of the profits resulted from the alleged mislabeling or which portion of GT's profits would serve as a compensatory rather than punitive function. (See id. at 8-9). The court is not persuaded.

"In arriving at a conclusion, the factfinder may be confronted with opposing experts, additional tests, experiments, and publications, all of which may increase or lessen the value of the expert's testimony[, b]ut their presence should not preclude the admission of the expert's testimony[.]" Kennedy v. Collagen Corp., 161 F.3d 1226, 1231 (9th Cir. 1998). Here, GT faults Ugone for only calculating GT's total profits which may be subject to disgorgement and for failing to reduce the number by other potentially applicable factors, (see Dkt. 266, Def. MIL No. 2 at 8-9), but these contentions go to the weight of his opinion, not admissibility. See Kennedy, 161 F.3d at 1231 ("[F]aults in [the] use of a particular methodology . . . go to the weight, not the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7539 FMO (GJSx) | Date | June 9, 2022 |
|---|---|---|---|
| Title | Tortilla Factory, LLC v. GT's Living Foods, Inc. | | |

admissibility, of [an expert's] testimony.") (internal quotation and alteration marks omitted).  In short, the court will deny Def. MIL No. 2 as it relates to Ugone's disgorgement analysis.

VIII.   DEFENDANT'S MIL NO. 3.

TF seeks to exclude the survey prepared by Dr. James Roberts ("Roberts"), as well as "any related testimony[,]" based on its contention that the survey "fails to adhere to generally accepted standards[.]"  (Dkt. 267, Def. MIL No. 3  at 1).

Consumer surveys may be used to show how the public reacts to allegedly false or misleading advertising.  Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1140 (9th Cir. 1997) ("Reactions of the public are typically tested through the use of consumer surveys.").  However, survey evidence must meet the requirements under Federal Rule of Evidence 702 for admissibility of expert evidence.[4]  See, e.g., id. at 1142-43 & n. 8.  As long as the survey is conducted according to accepted principles, "[t]echnical unreliability goes to the weight accorded a survey, not its admissibility."  Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252, 1262 (9th Cir. 2001); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1036 (9th Cir. 2010) ("[T]echnical inadequacies in a survey, including the format of the questions or the manner in which it was taken, bear on the weight of the evidence, not its admissibility.") (internal quotation marks omitted).  "Challenges to survey methodology go to the weight given the survey, not its admissibility."  Wendt v. Host Int'l, Inc., 125 F.3d 806, 814 (9th Cir. 1997).

Roberts is an expert in marketing research and consumer behavior.[5]  (Dkt. 258-11, Declaration of James A. Roberts, PhD ("Roberts Decl.") at ¶¶ 1, 5-12).  TF retained Roberts to "conduct a survey to determine whether sales of Kombucha Dog products are undermined in any way due to a leading brand in the industry, GT'S, selling its Enlightened kombucha drinks without the government alcohol warning label on the bottle."  (Id. at ¶ 1).  After considering "the variety of methods available to conduct such a survey[,]" including their limitations, Roberts "determined that a large-scale survey of adults in the U.S. conducted via the Internet would be the most appropriate way to collect the needed data."  (Id. at ¶ 13).  He contracted with Qualtrics, a widely used survey research company, to administer the online survey.  (Id.).  According to Roberts, his "primary goal regarding the sample for the [survey] was to generate a broad sample of U.S. adult consumers who may be interested in kombucha beverages."  (Id. at ¶ 16). The sample "consisted of 315 US adults who responded 'yes'" to the following questions: "Have you purchased and consumed a health beverage in the past year?  Health beverages include drinks such as kombucha, kefir, apple cider vinegar drinks, etc."  (Id. at ¶¶ 16-17).

---

[4] The court hereby incorporates the Rule 702 discussion set forth above.  See supra at § VII.

[5] Defendant does not challenge Roberts' qualifications.  (See, generally, Dkt. 267, Def. MIL No. 3).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7539 FMO (GJSx) | Date | June 9, 2022 |
|---|---|---|---|
| Title | Tortilla Factory, LLC v. GT's Living Foods, Inc. | | |

GT contends that Roberts's survey is flawed because it contains an unrepresentative sample, (see Dkt. 267, Def. MIL No. 3 at 3), "fail[ed] to replicate marketplace conditions" by showing survey participants partial views of its product labels and not including labels from other kombucha products, (id. at 4, 7), and asked "improper and biased questions[.]" (Id. at 8).

GT's objections go the weight and not the admissibility of Roberts's survey. See, e.g., Southland Sod Farms, 108 F.3d at 1143 (concluding that defendants' "objections – that the survey was only conducted in Southern California and asked leading questions – go only to the weight, and not the admissibility, of the survey"). With respect to GT's contention that Roberts's survey suffers from selection bias and did not contain a representative sample of kombucha drinkers in California, (see Dkt. 267, Def. MIL No. 3 at 3-4, 8), the court is unpersuaded that his decision to include potential buyers of kombucha and draw on a national sample, (see Dkt. 258-11, Roberts Decl. at ¶¶ 14, 16-17), renders the survey inadmissible. See, e.g., United States v. 400 Acres of Land, more or less situate in Lincoln Cnty. Nevada, 2017 WL 4797517, *6 (D. Nev. 2017) ("[C]ritiquing the selection of a target universe and sampling technique could amount to critique of methodology, a critique that bears on the weight rather than the admissibility of surveys under Ninth Circuit precedent."). Although a sample limited to California kombucha drinkers would likely be more probative than a national sample of potential kombucha drinkers, Roberts's survey is nonetheless probative of whether an alcohol warning on the label influences the purchasing decisions of consumers. Similarly, the label images shown to survey respondents were designed to test their reaction to the presence or absence of an alcohol warning. GT's criticism of how those labels were presented, (see Dkt. 267, Def. MIL No. 3 at 4) may affect the survey's persuasiveness, but it does not render the survey inadmissible. See 400 Acres of Land, 2017 WL 4797517, at *5 ("The Ninth Circuit has expressly and consistently held that the bias of survey questions bears on the survey's probative value rather than its admissibility."). Finally, GT's contention that Roberts should have "control[led] for the potential impact of order effects" in the survey questions by "rotat[ing] the questions and the response choices so that no response choice [would] have an increased chance of being selected (or not selected) due to its position[,]" (Dkt. 267, Def. MIL No. 3 at 8), is the type of methodological challenge that goes to the survey's weight rather than its admissibility. See Fortune Dynamic, Inc., 618 F.3d at 1036.

Finally, as for GT's argument that Roberts's survey is "irrelevant" because "it is incapable of showing that GT's labels impacted TF's sales[,]" (Dkt. 267, Def. MIL No. 3 at 9), TF responds that the survey is relevant to whether "the presence or absence of the [alcohol] warning labels affects consumer purchasing decisions and that if the playing field were leveled, [TF's] sales would increase." (Id. at 20). TF also notes that Roberts "was not asked to and did not quantify any specific damage value suffered by Tortilla Factory due to GT's misrepresentations of its alcohol content." (Id.). With that limitation to Robert's testimony in mind, the court finds that the disputed survey evidence is relevant to the issues in this case. See Samuels v. Holland Am. Line-USA Inc., 656 F.3d 948, 952 (9th Cir. 2011) ("[A] trial court has broad discretion in assessing the relevance and reliability of expert testimony.") (internal quotation marks omitted). In short, the court will deny defendant's MIL No. 3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7539 FMO (GJSx) | Date | June 9, 2022 |
|---|---|---|---|
| Title | Tortilla Factory, LLC v. GT's Living Foods, Inc. | | |

IX. DEFENDANT'S MIL NO. 4.

GT seeks to exclude evidence regarding tests performed by Vinquiry Laboratories ("Vinquiry") in 2017 and 2018 and, separately, "any expert testimony from Marvin Winston." (Dkt. 268, Def. MIL No. 4, Notice at 1). First, GT seeks to exclude documents attached to Blake Ebersole's ("Ebersole") expert report "bearing bates numbers TF000012, TF000028, TF000030, TF000032, TF000034, TF000036, TF001312 - TF001314, TF001315 - TF001325, and TF002982 - TF002984[,]" (Dkt. 268, Notice at 1), which reflect the 2017 and 2018 tests that were commissioned by TF and performed by Vinquiry. (Dkt. 268, Def. MIL No. 4 at 3). Because TF states that Ebersole "will not seek to admit the underlying test documentation" relating to the disputed Vinquiry testing, (id. at 14), the court will grant defendant's MIL with respect to these documents. (See Dkt. 305, Court's Order of May 20, 2022).

Second, GT seeks to preclude Ebersole from testifying about the disputed 2017/2018 Vinquiry tests.[6] (Dkt. 268, Def. MIL No. 4 at 5). GT characterizes the subject data as "the hearsay results of litigation-driven tests" and asserts that Ebersole, who relies in part on the tests to form his opinion, engaged in only a "cursory review" of the "collection, transportation, and testing methodology" that Vinquiry used to perform the tests. (Id. at 3, 5).

Rule 703 permits experts to "rely on inadmissible hearsay in forming their opinions, so long as it is of a type reasonably relied upon by experts in their field." United States v. Cazares, 788 F.3d 956, 977 (9th Cir. 2015); see Fed. R. Evid. 703 ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted."). Contrary to GT's assertions, Ebersole inquired about how Vinquiry stored bottles for testing and related procedures, and he did not identify any concerns with their methodology. (See Dkt. 268, Def. MIL No. 4 at 13). And the fact that TF contracted with Vinquiry to perform the tests does not render the test results inadmissible. See McClellan v. I-Flow Corp., 710 F.Supp.2d 1092, 1117 (D. Or. 2010) ("[T]he fact that an expert's opinion may be obtained for purposes of litigation does not render it unreliable if otherwise supported by objective, verifiable evidence that the testimony is based on scientifically valid principles.") (internal quotation marks omitted). As for GT's argument that Ebersole's testimony about the 2017/2018 Vinquiry tests has limited probative value that does not substantially outweigh its prejudice, (Dkt. 268, Def. MIL No. 4 at 5), TF responds that these earlier tests simply "confirm and validate the testing results [Ebersole] obtained from other labs[.]" (Id. at 14). The court is unconvinced that the probative value of the disputed Vinquiry test results is substantially outweighed by the danger of unfair prejudice. See Fed. R. Evid. 403. Accordingly, the court

---

[6] GT "seeks limited relief with respect to Mr. Ebersole[,]" and "does not purport to limit [his] ability to opine regarding the results of multiple rounds of testing he conducted or oversaw regarding the alcohol and/or sugar content of GT's Enlightened products, or even the handful of published studies conducted by independent third-parties on which he also relied." (Dkt. 268, Def. MIL No. 4 at 3).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7539 FMO (GJSx) | Date | June 9, 2022 |
|---|---|---|---|
| Title | Tortilla Factory, LLC v. GT's Living Foods, Inc. | | |

denies GT's MIL No. 4 as to Ebersole's testimony about the 2017/2018 Vinquiry test results.

Finally, GT seeks to exclude testimony by Marvin Winston ("Winston"), a second expert retained by TF to opine about alcohol testing of GT's products. (See Dkt. 268, Def. MIL No. 4 at 7). In particular, GT contends that Winston's testimony should be excluded pursuant to Rule 37(c) of the Federal Rules of Civil Procedure because he was disclosed after the expert discovery cutoff and, in the alternative, because his testimony would be cumulative. (Id.). TF responds that if Ebersole is "permitted to testify about the 2021 test results obtained by Mr. Winston[,]" then TF "will not require Mr. Winston's testimony." (Id. at 19). GT does not appear to object to Ebersole testifying about Winston's test results. (see, generally, Dkt. 282, Reply at 3-4). Accordingly, the court will grant GT's MIL No. 4 as to Winston's testimony.

X.      DEFENDANT'S MIL NO. 5.

GT seeks to exclude evidence regarding the class action settlement in Jonathan Retta, et al. v. Millennium Products, Inc. et al., No. CV 15-1801 PSG (AJWx) (C.D. Cal. 2015), and GT's rejection of TF's offer to jointly test GT's kombucha products. (Dkt. 269, Def. MIL No. 5 at 1-7).

The court will exclude this evidence on the same ground that it granted TF's MIL No. 4, which seeks to exclude settlement-related evidence involving TF. See supra at § IV. Admitting this evidence would undermine the "principles underlying" Rule 408 "that the evidence is irrelevant as being motivated by a desire for peace rather than from a concession of the merits of the claim"; and "promotion of the public policy favoring the compromise and settlement of disputes." United States v. Contra Costa Cnty. Water Dist., 678 F.2d 90, 92 (9th Cir. 1982) (footnotes omitted).

With respect to the Retta settlement, TF responds that it seeks to rely on this evidence to "show[] that GT[] knew or had reason to know that its kombucha products contained elevated alcohol and sugar levels[.]" (See Dkt. 269, Def. MIL No. 5 at 12-13). However, TF can put forth other evidence and does not need to rely on settlement-related evidence in Retta to show that GT had been the subject of a lawsuit arising from similar allegations.

As for GT's rejection of TF's offer to conduct joint testing, which was made during mediation, (see Dkt. 270, Declaration of Brian M. Berliner in Support of GT's Motions in Limine at §§ 4-5), the court is not persuaded that TF's offer to conduct joint testing relates to an offer to compromise a claim or to proving the validity or invalidity of the claim or the amount of damages. See Fed. R. Civ. P. 408. Under the circumstances here, conducting joint agreed-upon testing of the kombucha would have provided the parties with additional information that informed the settlement discussions. Still, the court will exclude this evidence under Rule 403, as such evidence would cause undue delay and needlessly waste time. Accordingly, the court will grant defendant's MIL No. 5.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 17-7539 FMO (GJSx) | Date | June 9, 2022 |
|---|---|---|---|
| Title | Tortilla Factory, LLC v. GT's Living Foods, Inc. | | |

## CONCLUSION

Based on the foregoing, IT IS ORDERED THAT:

1.  Plaintiff's Motion in Limine No. 1 [] to Exclude Testimony of Hannah Crum (**Document No. 253**) is **granted**.

2.  Plaintiff's Motion in Limine No. 2 [] to Exclude Testimony of GT's Living Foods, LLC's Expert Witness John Hansen Regarding Late-Produced and Incomplete Cost Data (**Document No. 254**) is **denied**.

3.  Plaintiff's Motion in Limine No. 3 [] to Exclude Testimony of GT's Living Foods, LLC's Expert Witness John Hansen Re: Apportionment (**Document No. 255**) is **denied**.

4.  Plaintiff's Motion in Limine No. 4 [] to Exclude Testimony and Evidence of Settlement Amounts in Other Litigation (**Document No. 256**) is **granted**.

5.  Plaintiff's Motion in Limine No. 5 [] to Exclude Evidence, Reference To, and Testimony Regarding George Dave's Mother's Breast Cancer (**Document No. 257**) is **denied**.

6.  Defendant's Motion in Limine No. 1 to Exclude Certain Evidence Regarding Tortilla Factory's Alleged Harm and Losses (**Document No. 265**) is **granted in part** and **denied in part** as set forth in this Order.

7.  Defendant's Motion in Limine No. 2 to Exclude Certain Expert Testimony from Keith R. Ugone (**Document No. 266**) is **granted in part** and **denied in part** as set forth in this Order.

8.  Defendant's Motion in Limine No. 3 to Exclude Survey Conducted by Dr. James Roberts and Any Expert Testimony Regarding the Same (**Document No. 267**) is **denied**.

9.  Defendant's Motion in Limine No. 4 to Exclude Litigation-Driven, Hearsay Test Results, Related Expert Testimony, and Late-Disclosed and Cumulative Testing-Related Testimony from Marvin Winston (**Document No. 268**) is **granted in part** and **denied in part** as set forth in this Order.

10.  Defendant's Motion in Limine No. 5 to Exclude Evidence Regarding Prior Settlements or Settlement Discussions (**Document No. 269**) is **granted**.

|  | 00 | : | 00 |
|---|---|---|---|
| | Initials of Preparer | | gga |